(28 Misc. Rep. 595.)

## In re TUCKER'S ESTATE.

(Surrogate's Court, New York County. July, 1899.)

1. ACCOUNTING BY EXECUTOR—ALLOWANCE TO GUARDIAN.

An ex parte order, obtained by a general guardian, providing for an allowance for the support of minors entitled to the use of an income under the provisions of a will, is not binding on the executor on the settlement of his account.

2. SAME—PAYMENT TO GUARDIAN.

Where an executor is required to apply an income to the use of minors having a general guardian, it is lawful for him to pay allowances for their support to the guardian, although the latter has given no bond, since the provisions of Code Civ. Proc. § 2746, relating to bonds of guardians, do not apply to cases where an income is to be applied to the use of the infant.

3. SAME—SUPPORT OF INFANT LEGATEES.

Where the manner of the disposition of an income applicable to the use of minors under the provisions of a will is in no way limited by the testator, a broad discretion is vested in the trustee, and the court will not interfere in its exercise when there is no evidence of bad faith or extravagant expenditures.

In the matter of the settlement of the account of Fred J. Lancaster and another, as executors, etc., of Anna E. Tucker, deceased.

Louis O. Van Doren (Theodore H. Silkman, of counsel), for executors.

Alfred P. W. Seaman, special guardian.

VARNUM, S. This is one of the undecided matters that was before Surrogate ARNOLD. Decedent directed her executors and trustees to apply the income arising from her residuary estate to the use of three granddaughters during their lives. At the time of decedent's death, in 1888, these beneficiaries were 9, 11, and 13 years of age, respectively. They lived with their mother, who was appointed their general guardian by the supreme court. It appears that during the period covered by the accounting, from September, 1888, to March, 1891, the trustees paid to the general guardian, from the income in their hands, nearly $7,300 for the use of each infant. The annual income applicable to each child under the provision above noted was about $3,800. One of the infants was given an additional interest in the estate, so that its annual income amounted to $5,000, and all three of these beneficiaries are yet to share equally in their father's estate, which is quite large. In May, 1889, the general guardian obtained an ex parte order in the supreme court allowing her $20 a week for the board and care of each of said infants, in addition to payments for clothes, schooling, etc. Another ex parte order made additional annual allowances for each child. While these orders did not contain any direction to the trustees to pay these amounts, yet their provisions were carried out to the letter. During the period of eight months preceding the entry of the first order, the executors likewise allowed the general guardian $20 weekly for the board and care of each child. The main objection to the account was raised by the special guardian of these infants, and called into

question the propriety of the payments thus made by the trustees. On the first hearing the referee found that $50 per month was all that should be allowed for the care of an infant situated as these beneficiaries were. This finding appears to be merely an opinion of the referee, as no testimony on the question was taken. The referee further held, however, that the supreme court orders were conclusive, and that the payments made thereunder could not be attacked. Hence he held that the accounts should be surcharged with the amounts paid the general guardian for the care of her children in excess of $50 per month, but only for the period prior to the making of the first supreme court order. The order which decreed a rehearing of the issues directed the referee to take proper and competent testimony on the question of what was a reasonable charge for the support and maintenance of these infants. During the hearing thereafter had, the special guardian attempted to carry out this direction, but the testimony that he produced was utterly without value, and must be entirely discarded. As a result, the referee, in his second report, repeated his original finding on this subject. It should be said at the outset that I cannot agree in the conclusion that the supreme court orders bound the executors, or afforded them any protection. I fail to see how ex parte applications of this kind can in any wise control the conduct of persons not parties thereto. If, for example, the trustees had refused to make the payments that were allowed, assuredly they could not have been punished for a contempt. If the accountants were justified in applying the sums that were used for the maintenance of these children, their action must find support in a source other than the orders which apparently were entirely relied upon. The general guardian faithfully recorded the expenditures made by her, and the special guardian does not, it seems, contend that any of them were excessive, excepting only the allowance of about $86 per month for the care of each infant. It was not necessarily improper for the trustees to make the payments in question to the mother and general guardian, instead of directly applying the money themselves (Perry, Trusts, § 620), and I fail to see the force of the contention made by the special guardian that this course was unlawful because the general guardian has not given any bond under section 2746 of the Code of Civil Procedure. That section merely covers a case where a legacy or distributive share is payable to an infant, and has no bearing on the conduct of a trustee to apply income. In many cases, and especially where the general guardian is the parent of the infant, it is manifestly proper for a trustee to furnish the guardian with sufficient funds to conduct a household suitable to the style of living which the income justifies. It is true that the guardian herein, by reason of the new household carried on by her, lives on a much larger scale, and enjoys many more luxuries, than she was accustomed to before her children were the possessors of the life incomes which the bounty of the decedent provided for them. But it does not follow that parents of moderate circumstances, whose children, by some good fortune, are made financially independent, as in the present case, should be compelled to breathe in a different atmosphere from their children, or to break

bread at a different table.    On the contrary, the more liberal house-hold surroundings which the changed condition of things would prop-erly permit should undoubtedly be enjoyed by the parents.    Other-wise, indeed, the testator's goodness would prove a grave misfortune. It would, in all probability, mean the breaking asunder of family ties, the loss of parental authority, the death of filial love.    It seems to me that the special guardian's contention in this regard is unfounded, and should not be permitted to prevail.    The decedent in no way limited the trustees in the manner in which they should dispose of the incomes for the use of the children, or what proportion should be devoted to their actual support.    A broad discretion is vested in the accountants, and the court will not interfere with its exer-cise unless it is apparent that it is being abused.    Ireland v. Ireland, 84 N. Y. 321.    Certainly, the juxtaposition of the figures represent-ing the incomes of these infants, with the allowances made for their care and support, does not shock the conscience of the court.    The household that was carried on by the general guardian, and properly participated in by her, was not, in my opinion, an extravagant one, in the light of the property possessed by these beneficiaries.    Where it is claimed that a trust of this kind is being improperly exercised, and that the trustees are not acting in good faith, it seems to me that some tangible evidence should be produced in support of such a claim before the court should punish the trustees by surcharging their account.    A mere allegation that the trustee is abusing the discre-tion vested in him does not throw any burden on him to show that he is unjustly accused.    The special guardian has entirely failed to show any bad faith or that the reasonable cost of supporting the infants herein is less than the amounts paid out by the trustees.    Again, no evidence was produced as to what the character of a household should be for infants situated as these were, and what the reasonable con-tribution of each infant should be towards sustaining such a house-hold.    As the matter stands, and from the facts here present, my judgment is that the amounts expended for the children were not excessive.    The exceptions to the referee's report, in so far as it holds that the account should be surcharged by reason of these pay-ments, are sustained.    The contention of the executors that the share of the posthumous child of Edward C. Tucker is not dependent upon the provisions of the will is also sustained, and the report should be corrected accordingly.    The other findings made by the referee are supported by the evidence.    The exceptions thereto are over-ruled, and the report will be confirmed in all respects except as afore-said.    The question of commissions will be taken up and determined at the time of the settlement of the decree.

Decreed accordingly.